UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
|---|---|---|---|
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

| Present: The Honorable | JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE |
|---|---|

| M. Lindaya | Not reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not present | Not present |

**Proceedings:    (IN CHAMBERS) ORDER RE MOTION TO REMAND (DKT. 16)**

## I.    Introduction

On April 2, 2025, Joseph Roszhart ("Plaintiff" or "Roszhart") brought this action against Mindlance, Inc. ("Mindlance" or "Defendant") and Does 1-100[1] in the Los Angeles Superior Court. Dkt. 1-4 ("the "Complaint"). The Complaint alleges that Defendant violated the employment rights of Roszhart, and similarly situated employees, under California law. The Complaint advances the following causes of action: (1) Violation of Cal. Lab. Code §§ 510 and 1198, *id.* ¶¶ 47–55; (2) Violation of Cal. Lab. Code §§ 226.7 and 512(a), *id.* ¶¶ 56–66; (3) Violation of Cal. Lab. Code § 226.7, *id.* ¶¶ 67–75; (4) Violation of Cal. Lab. Code §§ 1194, 1197, and 1197.1, *id.* ¶¶ 76–81; (5) Violation of Cal. Lab. Code §§ 201 and 202, *id.* ¶¶ 82–87; (6) Violation of Cal. Lab. Code § 204, *id.* ¶¶ 88–93; (7) Violation of Cal. Lab. Code § 226(a), *id.* ¶¶ 94–100; (8) Violation of Cal. Lab. Code § 1174(d), *id.* ¶¶ 101–105; (9) Violation of Cal. Lab. Code §§ 2800 and 2802, *id.* ¶¶ 106–110; and (10) Violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, *id.* ¶¶ 111–117.

On June 12, 2025, Defendant filed a notice of removal based on diversity jurisdiction. Dkt. 1 (the "Notice of Removal"). On September 8, 2025, Plaintiff filed a Motion to Remand (Dkt. 16, the "Motion"), on the basis that the amount of controversy was not sufficient to establish diversity jurisdiction. On September 22, 2025, Defendant filed an opposition. Dkt. 18 (the "Opposition"). On September 29, Plaintiff filed a reply in support of the Motion. Dkt. 19 (the "Reply"). On October 7, 2025, Defendant sought leave to file a surreply (Dkt. 23, the "Surreply") based on arguments advanced in the Reply. Dkt. 22. That request was granted, and the Surreply was accepted. Dkt. 24.

A hearing on the Motion was held on October 20, 2025, and it was taken under submission. Dkt. 32. For the reasons stated in this Order, the Motion is **DENIED**.

---

[1] Pursuant to Local Rule 19-1, no complaint or petition shall be filed that includes more than ten Doe or fictitiously named parties. Accordingly, Doe Defendants 11 through 100 were dismissed in the Order Setting Pretrial Deadlines. Dkt. 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
|---|---|---|---|
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

**II.    Background**

      A.    Parties

It is alleged that Plaintiff is a citizen of California. Dkt. 1 at 4. It is alleged that Defendant is a citizen of New Jersey because it is a corporation organized under the laws of New Jersey whose headquarters are located in Union, New Jersey. *Id.*

      B.    Substantive Allegations

It is alleged that Defendant employed Plaintiff and other similarly situated hourly or non-exempt workers throughout California. Dkt. 1-4 ¶¶ 7, 12-13. It is alleged that Plaintiff and the putative class members worked more than eight hours a day and/or 40 hours per week during their employment with Defendant, but were not compensated as required by California law. Dkt. 1-4 ¶¶ 24, 37. It is also alleged that Defendant violated California law by the following conduct: (i) the failure to provide Plaintiff and other putative class members with required meal and rest periods (*id*. ¶ 38); (ii) the failure to compensate Plaintiff and other putative class members for all hours worked and for missed meal periods and/or rest breaks, notwithstanding that Defendant knew or should have known that they were entitled to such compensation (*id*. ¶¶ 19, 25-26, 28-29); (iii) the failure to pay Plaintiff and other putative class members wages owed to them upon discharge or resignation (*id.* ¶ 31); (iv) the failure to provide Plaintiff and other putative class members complete and accurate wage statements and payroll records (*id*. ¶¶ 33-34, 42-43); and (v) the knowing failure to reimburse Plaintiff and other putative class members for necessary business-related expenses they incurred and paid (*id*. ¶¶ 35, 44).

**III.    Analysis**

      A.    Legal Standards

Except as prohibited by Congress, any civil action brought in a state court may be removed by the defendant to a federal court if, at the time of removal, there is original jurisdiction over the action. 28 U.S.C. § 1441(a). Original jurisdiction may be established through federal question jurisdiction or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332. Diversity jurisdiction is present where the amount in controversy exceeds $75,000 and the adverse parties are citizens of different states. *See* 28 U.S.C. §§ 1332, 1441.

A motion to remand is the procedural means to challenge the removal of an action. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A motion to remand may raise either a facial or a factual challenge to the defendant's jurisdictional allegations made in support of removal. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014). "A facial attack accepts the truth of the [jurisdictional] allegations but asserts that they are insufficient on their face to invoke federal jurisdiction." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (quoting *Salter v. Quality Carriers*, 974 F.3d 959, 964 (9th Cir. 2020) (internal quotation marks omitted). In contrast, a factual attack "contests the truth of the [jurisdictional] factual allegations, usually by introducing evidence outside the pleadings." *Id.* (quoting *Salter*, 974 F.3d at 964 (internal quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
|---|---|---|---|
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

In response to a facial challenge, the defendant is not required to present evidence in support of removal jurisdiction. *Ehrman v. Cox Commc'ns, Inc.*, 932 F.3d 1223, 1228 (9th Cir. 2019). Thus, when the moving party does not contest the factual allegations made in the removal notice, but instead asserts that those allegations are facially insufficient to show federal jurisdiction, the factual allegations are deemed true and all reasonable inferences are drawn in favor of the removing party. *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023).

Only in response to a factual challenge must a defendant provide competent and admissible evidence as to its jurisdictional allegations that establishes them by a preponderance of the evidence. *Leite*, 749 F.3d at 1122; *see also Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014)) (when removal is challenged, "both sides submit proof and the court decides, by a preponderance of the evidence," whether the elements of removal have been satisfied).

Because federal courts have limited jurisdiction, the removal statute is to be strictly construed; any doubt about removal is to be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). "If a case is improperly removed, the federal court must remand the action because it has no subject-matter jurisdiction to decide the case." *ARCO Env't. Remediation, L.L.C. v. Dep't of Health & Env't. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000).

    B.    Application

        1.    <u>Diversity of Citizenship</u>

As noted, diversity jurisdiction requires a showing that the parties are citizens of different states and the amount in controversy is more than $75,000. 28 U.S.C. 1332(a). The parties agree that Plaintiff and Defendant are citizens of different states, *i.e.,* Plaintiff is a citizen of California and Defendant is a citizen of New Jersey. *See* Dkt. 1 at 4.

        2.    <u>The Amount in Controversy</u>

            a.  Applicable Standards

"[T]he amount in controversy includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). Thus, "[t]he amount in controversy may include 'damages (compensatory, punitive, or otherwise) and the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes.' " *Id.* at 416 (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648–49 (9th Cir. 2016)). The amount in controversy "is determined by the complaint operative at the time of removal . . . ." *Id.* at 415. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

"If the plaintiff's complaint, filed in state court, demands monetary relief of a stated sum, that sum, if asserted in good faith, is 'deemed to be the amount in controversy.'" *Dart Cherokee Basin Operating*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

*Co., LLC*, 574 U.S. at 84 (quoting 28 U.S.C. § 1446(c)(2)). "When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so." *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)).

    b. Allegations and Proffered Evidence

The Complaint alleges that "claims for compensatory damages, restitution, penalties, wages, premium pay, and pro rata share of attorneys' fees" total "less than seventy-five thousand dollars ($75,000)." Dkt. 1-4 ¶ 1. However, it does not provide any specific allegations to support this conclusory statement. "Where, as here, it is unclear from the face of the complaint whether the amount in controversy exceeds $75,000, 'the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold.' " *Chavez*, 888 F.3d at 416 (quoting *Urbino v. Orkin Servs. of Cal., Inc.*, 726 F.3d 1118, 1121–22 (9th Cir. 2013)). The parties "may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Additionally, the defendant may rely on "reasonable assumptions underlying the defendant's theory of damages exposure." *Id.* at 1198.

In support of its position that the amount in controversy exceeds $75,000, Defendant has proffered the following evidence: (i) the declaration of counsel Jonathan Heller, Dkt. 1-1; (ii) the declaration of Jennifer Volk, Defendant's Associate Director of Human Resources, Dkt. 1-3, in which she proffers evidence as to the duration of Plaintiff's employment and the wages he received; and (iii) a second declaration of Jennifer Volk, Dkt. 18-1, in which she proffers Defendant's payroll records for Plaintiff. Based on Plaintiff's wage rates and the number of pay periods he worked, Defendant contends that this evidence shows that the amount of controversy as to Plaintiff alone is at least $133,764, including an award of $75,000 in attorney's fees that are reasonably expected to be sought, and $58,764 in actual alleged damages and civil penalties. Dkt. 1 at 14.

Defendant calculates the amount in controversy for each cause of action based on Plaintiff's wage of $52.00 per hour and overtime rate of $78.00 per hour, Dkt. 1-3 at 2, and assumptions about the frequency of violations. For the alleged overtime violations, Defendant assumes that Plaintiff claims to have worked at least three hours of unpaid overtime for each of the 41 weeks of his employment and calculates a corresponding amount in controversy of $9594. Dkt. 1 at 7. For the alleged unpaid meal breaks and rest breaks, Defendant assumes that Plaintiff claims that no meal breaks were provided for any day of Plaintiff's employment, and estimates a corresponding amount of controversy of $21,320. *Id.* at 8. For unpaid minimum wages, Defendant estimates two hours per week of uncompensated work, plus liquidated damages, and estimates an amount in controversy of $8320. *Id.* at 9. For final wages not timely paid, Defendant estimates an amount of controversy of $12,480, which is the maximum penalty available for violating Labor Code § 203 based on the allegations in the Complaint. *Id.* at 9-10.

For wages not timely paid during employment, Defendant calculates an amount in controversy of $4100, which is the maximum penalty available for violating Labor Code § 204 based on the allegations in the Complaint. *Id.* at 10. For non-compliant wage statements, Defendant calculates an amount in controversy of $1950, which is the maximum penalty available under Labor Code § 226(a) based on the allegations in the Complaint. *Id.* For failure to keep requisite payroll records, Defendant calculates

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

an amount in controversy of $500, the penalty for willful failure to maintain accurate records under Cal. Lab. Code § 1174.5. *Id.* at 11. For unreimbursed business expenses, Defendant assumes an amount of controversy of $500. *Id.* For attorney's fees, Defendant estimates that an amount of controversy of $75,000 would be met with 250 hours of attorney time at a rate of $300 per hour. *Id.* 12–13.

Collectively, all of the foregoing amounts total $133,764. *Id.* at 14.

Plaintiff contends that Defendant has not proffered sufficient evidence to support its calculations. Plaintiff contends that Defendant's assumptions about the rate of violations are unreasonable and pulled "from thin air." Dkt. 16 at 5. In the Reply, Plaintiff also contends that Defendant's own payroll records do not support Defendant's amount in controversy calculations. Dkt. 19 at 2. Plaintiff also argues that the amount of a potential award of attorney's fees should be calculated based on their amount as of the date of the removal, rather than based on what amount is anticipated throughout the litigation. Dkt. 16 at 11.

For the reasons discussed below, although the total amount of Defendant's estimates for amounts in controversy is not supported by sufficient evidence, that evidence does show by a preponderance that the amount in controversy at the time of removal was greater than $75,000.

       c.   Analysis

            i.       <u>Attorney's Fees</u>

Attorney's fees are considered part of the amount in controversy where the statute at issue provides for their recovery. *Mahmood v. Nat'l Credit Sys., Inc.*, No. 24-CV-203, 2025 WL 1994780, at *10 (S.D. Cal. July 17, 2025) (citing *Fritsch v. Swift Transp. Co. of Ariz.*, LLC, 899 F.3d 785, 793 (9th Cir. 2018)). When determining the amount of attorney's fees that are at issue, the Ninth Circuit includes both those at the time of removal as well as those a plaintiff may be entitled to recover if the plaintiff prevails on its claims. *Fritsch*, 899 F.3d at 795. As noted, the defendant bears the "burden of proving future attorneys' fees" by a preponderance of the evidence. *Id.* This showing must be made with "summary-judgment-type evidence," *Id.* (citing *Chavez*, 888 F.3d at 416). If the defendant fails to carry this burden, "[a] district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy[.]" *Fritsch*, 899 F.3d at 795. In calculating the attorney's fees in controversy, district courts may also rely on "their own knowledge of customary rates and their experience concerning reasonable and proper fees." *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)). In some cases, attorney's fees alone can support a finding that the $75,000 amount of controversy is met. *Mahmood*, 2025 WL 1994780, at *11.

The wage and overtime statutes at issue in this action provide for the recovery of attorney's fees. Cal. Lab. Code §§1194, 226(e)(1). In support of its assertion that a potential award of attorney's fees may exceed $75,000, Defendant identifies the following scenario: "At an assumed rate of $300 per hour, Plaintiff's counsel would need to spend only 250 hours of attorney time (a generally conservative estimate of time spent through trial) to incur $75,000 in reasonable attorneys' fees (250 x $300 = $75,000)." Dkt. 1 at 12–13. "Given that Plaintiff's counsel has been practicing for more than fifteen (15) years, this conservative amount clearly underestimates the likely attorneys' fees that Plaintiff's counsel may generate." *Id.* n.5. Defendant also cites several wage and hour cases in which courts in California

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

have awarded an amount that is at least at or near $75,000 in fees. *Id.* at 13; *see Bandoy v. Huh,* 1996 WL 675978 (Cal. Sup. 1996) (awarding $73,680 in attorney's fees in a wage-and-hour employee misclassification case in which the plaintiff recovered in excess of $200,000 in unpaid wages); *Martin v. The Old Turner Inn,* 2003 WL 22416020 (Cal. Sup. 2003) (awarding $147,610 in attorney's fees and costs in a single-plaintiff wage and hour case in which the plaintiff recovered $49,508 in damages). It also cites wage and hour cases in which remand was denied, because anticipated attorney's fees were deemed to exceed $75,000. *See Kendall v. Verizon Data Services, LLC,* 2023 WL218963 (N.D. Cal. Jan. 17, 2023); *Lippold v. Godiva Chocolatier, Inc.*, 2010 WL 1526441, at *3 (N.D. Cal. April 15, 2010).

Plaintiff responds that Defendant's estimate of attorney's fees is speculative and without a sufficient evidentiary basis. Dkt. 16 at 11–12. Citing case law that predates *Fritsch*, Plaintiff contends that future fees cannot be considered. *Id.*

Defendant has not proffered declarations with evidence as to the typical number of hours spent on a wage and hour case. Nor has it proffered evidence as to the hourly rates generally sought by attorneys with a level of experience comparable to that of Plaintiff's counsel. However, Defendant's estimates and citations to other cases in which similar claims were advanced, when reviewed in light of the Court's substantial experience with calculating attorney's fees for cases litigated in this District, show by a preponderance of the evidence that $50,000 is a reasonable, conservative estimate of the amount of attorney's fees Plaintiff's counsel would seek if Plaintiff prevails on his claims following a trial. *See Lippold*, 2010 WL 1526441, at *4 ("While a declaration from defense counsel about the hours typically expended in wage and hour cases would have been helpful, the Court finds that defendant has made a reasonable good faith estimate of the expected fees. The Court is satisfied that defendant has met the evidentiary burden required to establish federal court jurisdiction."). This is based on an assumed, conservative request for a $300 hourly rate, which is supported by the range in hourly rates often sought by plaintiff's counsel in similar cases. It is also based on an assumed, conservative request for the compensation of approximately 170 hours of time. This amount is readily shown by considering the time already spent on preparing the Complaint, the time that will be devoted to discovery and pretrial motions, and the time that will be spent on a trial.

ii.      Damages

"When a complaint alleges violations in broad, vague terms, the removing defendant must make some estimate of how frequently violations occurred." *Herrera v. Carmax Auto Superstores California, LLC*, No. 14-CV-776, 2014 WL 12586254, at *1 (C.D. Cal. June 12, 2014). Thus, "the removing defendant is often incapable of producing any evidence going directly to the frequency of the violations, especially given that the defendant likely disagrees that any violation occurred at all." *Id.* at *2; *see also Feao v. UFP Riverside, LLC*, No. 17-CV-3080, 2017 WL 2836207, at *5 (C.D. Cal. June 29, 2017) ("a removing defendant is not required to go so far as to prove plaintiff's case for him by proving the actual rates of violation"). A removing defendant is also not "required to comb through its records to identify and calculate the exact frequency of violations[.]" *Ritenour v. Carrington Mortg. Servs. LLC*, 228 F. Supp. 3d 1025, 1029 (C.D. Cal. 2017) (citation omitted). However, a defendant's estimates must be "supported directly by, or reasonably inferred from, the allegations of the complaint." *Herrera*, 2014 WL 12586254 at *4.

The Complaint does not include allegations as to the frequency of the violations advanced in each

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

cause of action. Defendant's Notice of Removal includes its estimates. *See* Dkt. 1. Plaintiff contends that Defendant's estimates are unsupported by the payroll records it proffered, which show the number of hours Plaintiff worked per pay period. Dkt. 19 at 2. Based on those records, the Reply includes a summary of the total hours worked and average hours worked per day each pay period. *Id.* In the Reply, Plaintiff argues that, because he worked, on average, eight or more hours per day during only six pay periods, he would not have received overtime in at least 15 pay periods as Defendant assumes. Dkt. 19 at 5. Plaintiff also argues that, because he averaged two or less hours per day in two pay periods, he could not have qualified for meal or rest breaks during them. *Id.* In the Surreply, Defendant contends that Plaintiff's use of a daily average per pay period is inappropriate. Thus, it argues that such an average is artificially lowered by days Plaintiff did not work during that pay period. Dkt. 23 at 2–3.

Defendant's position is persuasive as to why using daily averages does not accurately reflect the rate of an alleged violation per pay period. Even in the pay periods in which Plaintiff did not average eight hours of work per day, Plaintiff could still be eligible for overtime on the days on which he worked in excess of eight hours, and on the weeks in which he worked in excess of 40 hours. Cal. Lab. Code § 510(a). Further, Plaintiff's argument is not consistent with the allegation in the Complaint that Defendant's payroll records are inaccurate. *See*, *e.g.*, Dkt. 1-4 ¶¶ 103, 105.

Notwithstanding the foregoing analysis, certain of Defendant's calculations of the amounts in controversy for alleged violations are not sufficiently supported. In such circumstances, the Ninth Circuit directs courts to consider the claim under a more reasonable assumption where one is available, rather than to "zero-out" the claim. *Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 996 (9th Cir. 2022). Based on a review of the evidence and the competing arguments that have been presented by the parties, calculations are made below as to the estimated amount in controversy for each cause of action advanced by Plaintiff. These estimates are based, in part, on the following table, which summarizes the evidence as to the number of hours that Plaintiff worked per pay period:

| Pay Period Number | Date Range | Total Hours Worked |
|---|---|---|
| 1 | 2/26/2023 - 3/11/2023 | 80 |
| 2 | 3/12/2023 - 3/25/2023 | 81.62 |
| 3 | 3/26/2023 - 4/8/2023 | 56 |
| 4 | 4/9/2023 - 4/22/2023 | 76 |
| 5 | 4/23/2023 - 5/6/2023 | 75 |
| 6 | 5/7/2023 - 5/20/2023 | 80 |
| 7 | 5/21/2023 - 6/3/2023 | 74 |
| 8 | 6/4/2023 - 6/17/2023 | 64 |
| 9 | 6/18/2023 - 7/1/2023 | 67 |
| 10 | 7/2/2023 - 7/15/2023 | 40 |
| 11 | 7/16/2023 - 7/29/2023 | 81.5 |
| 12 | 7/30/2023 - 8/12/2023 | 72 |
| 13 | 8/13/2023 - 8/26/2023 | 72 |
| 14 | 8/27/2023 - 9/9/2023 | 71 |
| 15 | 9/10/2023 - 9/23/2023 | 80 |
| 16 | 9/24/2023 - 10/7/2023 | 80 |
| 17 | 10/8/2023 - 10/21/2023 | 72 |
| 18 | 10/22/2023 - 11/4/2023 | 59 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| --- | --- | --- | --- |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

| 19 | 11/5/2023 - 11/18/2023 | 56 |
| --- | --- | --- |
| 20 | 11/19/2023 - 12/2/2023 | 20 |
| 21 | 12/3/2023 - 12/16/2023 | 16 |

(1)      Failure to Pay Overtime Wages

Defendant's calculations of potential overtime violations overstate the corresponding amount in controversy. Thus, they assume a rate of violation that is higher than what is supported by the evidence, and apply certain unwarranted assumptions as to those alleged violations.

*First*, Defendant estimates that Plaintiff will claim to have worked at least three hours of unpaid overtime during every week of his employment. Dkt. 1 at 7. It does not provide support for this figure. Although Plaintiff challenges the sufficiency of Defendant's estimate, "[n]otably, Plaintiff fails to assert any different rate of violation or to submit any evidence indicating a contrary rate of violation. Plaintiff does not even submit [his] own declaration stating that [he] experienced less frequent rates of violation than those asserted by Defendant[]." *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *3 (C.D. Cal. 2015).

In light of the limited evidence presented, downward adjustments are warranted. Other district courts have determined that a violation rate of one to two hours per week is reasonable. *See*, *e.g.*, *Ochoa v. Fred Loya Ins. Agency, Inc.*, No. 24-CV-151, 2024 WL 2014781, at *9 (E.D. Cal. May 7, 2024) (collecting cases in which the presumption of one to two hours of missed overtime per week were deemed reasonable estimates); *Wheatley v. MasterBrand Cabinets, LLC*, No. 18-CV-2127, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) ("The Court finds Defendant's estimate of 2.5 hours per class member per week excessive, given that Plaintiff did not allege that all class members worked uncompensated overtime every day. It finds an estimate of one hour per class member per week to be appropriate in light of Plaintiff's allegation that Defendant had a "pattern and practice" of wage abuse, including overtime violations.").

*Second*, Defendant's calculations assume that Plaintiff contends that he was not paid at all for these overtime hours*, i.e.,* at his regular hourly rate. Dkt. 1 at 7. The Complaint may reasonably be construed to allege that Plaintiff was paid, but not at the proper overtime rate: "Plaintiff and the other 20 class members were required to work more than eight (8) hours per day and/or forty (40) hours 21 per week without overtime compensation for all overtime hours worked." Dkt. 1-4 at 11. Thus, an appropriate estimate of the amount in controversy with respect to the overtime claim is the difference between what would have been earned at the $78 per hour overtime rate, and the regular hourly rate of $52, multiplied by one to two hours a week and 41 weeks. *See Kendall*, No. 22-CV-5324, 2023 WL 218963, at *1 (adjusting a defendant's calculation of the overtime amount in controversy to account only for the difference in overtime and regular pay rates).

Applying the foregoing analysis, it is reasonable to conclude that the amount sought for alleged failure to pay overtime wages is in the range of $1066 to $2132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

(2)    Missed Meal Breaks

Cal. Lab. Code § 512(a), and the applicable Industrial Welfare Commission ("IWC") Wage Orders provide that an employee must be provided with a meal period of at least 30 minutes if the employee works more than five hours per day, and a second meal period of at least 30 minutes if the employee works more than 10 hours a day. For every day that an employer fails to provide a required meal period, the employer must pay the employee for one additional hour of work at the employee's regular rate of pay. § 226.7(c).

The Complaint alleges that Defendant "intentionally and willfully required Plaintiff and the other class members to work during meal periods and failed to compensate them the full meal period premium for work performed during meal periods." Dkt. 1-4 ¶ 63. Defendant assumes that Plaintiff claims that he was not provided with a meal or rest break five days a week during 41 weeks of work. Dkt. 18 at 13–14. In so doing, Defendant cites cases that approve the use of a 100% violation rate in calculation of the amount in controversy at the time of removal for allegedly missed meal and/or rest periods because "plaintiff was the 'master of [his] claim[s],' and if she wanted to avoid removal she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought." *Coleman v. Estes Exp. Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) (citing *Muniz v. Pilot Travel Centers LLC*, No. 07-CV-325, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007).

The proffered records do not suggest that Plaintiff would have qualified for a meal break for five days every week that he worked. *See* Dkt. 18-1 at 6–7. Even if Plaintiff only worked five hours every day, the minimum to qualify for a meal period, he would have had to work for 50 hours every pay period to reach Defendant's estimated violation rate. Based on Defendant's records, there were at least three pay periods in which Plaintiff worked less than that number of hours. These are pay periods 10, 20 and 21. During these pay periods, Defendant's records show that Plaintiff worked 40, 20, and 16 hours, respectively. Dkt. 18-1 at 6, 7, 17. Notwithstanding that the Complaint alleges both that Defendant failed to keep accurate payroll records, Dkt. 1-4 ¶¶ 103, 105, and that Plaintiff worked for more than eight hours per day, *see id.* ¶ 37, a reasonable estimate is that Plaintiff qualified for meal breaks for only eight, five and three days during those respective pay periods. Accordingly, the estimate for meal period violations is adjusted to ten violations for each of 18 pay periods and eight, five and three violations for the aforementioned pay periods, multiplied by one hour a day at Plaintiff's regular rate of $52 per hour. This totals $10,192 in damages for missed meal periods.

(3)    Missed Rest Breaks

Under Cal. Lab. Code § 226.7 and the IWC Wage Orders, an employee must be provided with a rest period of at least 10 minutes for each daily, four hour work period. For each day that an employee was entitled to, but did not receive a rest period, an employer must pay an additional one hour at the employee's regular rate. § 226.7(c).

The Complaint alleges that Defendant "required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute net rest period per each four (4) hour period worked." Dkt. 1-4 ¶¶ 71–72. Defendant estimates a violation rate of five times per week for Plaintiff's 41 weeks of work. As with missed meal periods, courts have allowed 100% violation rates for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

similar allegations of missed rest breaks. *See Coleman*, 730 F. Supp. 2d at 1149; *Muniz*, 2007 WL 1302504, at *4.

Like the meal period estimates, the rest period estimates are adjusted based on the wage statements provided by Defendant. In the last two wage periods, Plaintiff worked 20 and 16 hours, and accordingly would have qualified for rest periods on only five and four days during those periods, if Plaintiff worked a minimum four hours on those days. Accordingly, the rest period violation is adjusted to ten violations for each of 19 pay periods and five and four violations for the aforementioned two pay periods, multiplied by one hour a day at Plaintiff's regular rate of $52 per hour. This totals $10,348 in damages for missed rest breaks.

(4)     Unpaid Minimum Wage

Plaintiff alleges that Defendant failed to pay minimum wages as required by Cal. Lab. Code §§ 1194, 1197, and 1197.1. Dkt. 1-4 ¶ 79. Under § 1194, "any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation[.]" Under § 1197, the minimum wage is fixed by applicable local and state law. Cal. Lab. Code § 1197.1 also provides for a civil penalty of $100 for a pay period for which an employee is intentionally paid less than minimum wage, and $250 for each pay period in which there is a subsequent failure to pay minimum wages. An employee is also entitled to liquidated damages in an amount equal to wages required, but not paid. § 1194.2.

Defendant estimates two hours of uncompensated time per work week at Plaintiff's regular rate, plus liquidated damages. Dkt. 1 at 9. It does not state why two hours a week is a reasonable estimate. It also does not allege an amount in controversy as to civil penalties. *See id.*

A violation rate of one to two hours per week for minimum wage violations is reasonable. Courts have generally determined that "one hour of unpaid minimum wage and unpaid overtime per week per class member . . . is a conservative estimate routinely endorsed by courts in evaluating [Class Action Fairness Act ("CAFA")]'s amount in controversy requirement when plaintiff fails to include specific allegations." *Kastler v. Oh My Green, Inc.*, No. 19-CV-2411, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019). Two hours a week is also not unreasonable; such a violation rate has been approved to calculate overtime damages. *See Lujano v. Piedmont Airlines, Inc.*, No. 23-CV-405, 2023 WL 5805582, at *5 (C.D. Cal. Sept. 6, 2023). There is no showing that the same estimates cannot be used for minimum wage violations and for a non-CAFA class action case, where Plaintiff has similarly alleged a "pattern and practice" of failure to pay wages. Dkt. 1-4 ¶ 25.

Applying the foregoing, Defendant's use of Plaintiff's regular wage to calculate unpaid minimum wage damages is inaccurate. "[D]amages for an unpaid minimum wage claim would be California's minimum *wage* multiplied by the number of unpaid hours worked, and then doubled to include liquidated damages." *Lewis v. Arvato Digital Servs., LLC*, No. 24-CV-2693, 2025 WL 1554331, at *3 (C.D. Cal. May 28, 2025) (quotation marks and citation omitted). In 2023, California's minimum wage was $15.50 per hour. 8 Cal. Code Regs. § 11040. Accordingly, damages for unpaid minimum wages should be $15.50 multiplied by 41 weeks, multiplied by one to two hours per week, doubled for liquidated damages. This results in a range of $1271 to $2542.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

(5)      Final Wages Not Timely Paid

Under Cal. Lab. Code § 201, an employee who is discharged must be paid all earned and unpaid wages immediately. Under Cal. Lab. Code § 202, an employee who resigns must be paid within 72 hours, or at the time of resignation if she has provided a notice of at least 72 hours before of an intention to resign. Failure to make these final payments in a timely manner subjects an employer to a penalty in the amount of that employee's wages from the due date until the date an action seeking their recovery is commenced, for a maximum of 30 days. § 203. Plaintiff alleges that Defendant "intentionally and willfully failed to pay Plaintiff and the other class members who are no longer employed by Defendants their earned and unpaid wages within seventy-two (72) hours of their leaving Defendants' employ." Dkt. 1-4 ¶ 84. Plaintiff seeks up to the 30-day maximum penalty. *Id.* ¶ 87.

Defendant appropriately calculates the penalty as eight hours a day for the maximum of 30 days, multiplied by Plaintiff's regular rate of $52 per hour. Thus, the amount in controversy for final wages not timely paid is $12,480.

(6)      Wages Not Timely Paid During Employment

Cal. Lab. Code § 210 permits statutory penalties for failure to pay wages timely under § 204. Initial violations are penalized at $100 for each failure to pay each employee, and subsequent ones are $200 plus 25% of the amount unlawfully withheld. Plaintiff contends that Defendant "intentionally and willfully failed to pay Plaintiff and the other class members all wages due to them within any time period permissible under" § 204. Dkt. 1-4 ¶ 92.

Based on the allegations in the Complaint, Defendant assumes violations for each pay period, and calculates waiting time penalties of $4100 ($100 for the first pay period and $200 for the following 20). Dkt. 1 at 10. Defendant does not include 25% of the amount allegedly unlawfully withheld in its calculation. Because Defendant does not allege that in its amount in controversy, it is not included. Therefore, a reasonable estimate of the waiting time penalties that are considered is $4100.

(7)      Non-Compliant Wage Statements

Cal. Lab. Code § 226(e) provides for a statutory penalty for wage statements that do not meet the requirements of § 226(a). The penalty is "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)." § 226(e). Plaintiff alleges that Defendant "intentionally and willfully failed to provide Plaintiff and the other class members with complete and accurate wage statements." Dkt. 1-4 ¶ 96.

Defendant calculates wage statement penalties at $50 for the initial violation and $100 for 19 subsequent violations, which results in a total of $1950. This is a reasonable calculation given that there were a total of 21 pay periods.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

(8)      Failure to Keep Requisite Payroll Records

Cal. Lab. Code § 1174.5 provides a civil penalty of $500 for a failure to keep complete and accurate records pursuant to § 1174(d). In the Complaint, Plaintiff alleges that Defendant "intentionally and willfully failed to keep accurate and complete payroll records." Dkt. 1-4 ¶ 103.

Defendant contends that the amount in controversy for failure to keep payroll records is at least $500. Dkt. 1 at 11. This is a reasonable estimate of the amount in controversy for this claim.

(9)      Unreimbursed Business Expenses

Cal. Lab. Code § 2800 requires that an employer "indemnify his employee for losses caused by the employer's want of ordinary care." Cal. Lab. Code § 2802 requires that an employer "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties . . . ."

Plaintiff alleges that Defendant "intentionally and willfully failed to reimburse Plaintiff and the other class members for all necessary business-related expenses and costs." Dkt. 104 ¶ 109. Defendant estimates an amount in controversy of $500 in unreimbursed business expenses. Dkt. 1 at 11. Defendant provides no basis for this estimate. However, because the Complaint does not allege how frequently this occurred or the type of expenses at issue, $500 is reasonable. In similar cases, issues as to costs for the use of an employee's personal property for business purposes are frequently advanced. Accordingly, the amount in controversy as to this cause of action is sufficiently shown to be $500.

iii.      Summary Table

Based on the adjusted amounts in controversy for the causes of action and attorney's fees, the following table summarizes the total amount in controversy.

| Cause of Action | Amount in Controversy Estimate |
|---|---|
| Overtime | $1066 to $2132 |
| Meal Periods | $10,192 |
| Rest Breaks | $10,348 |
| Minimum Wage | $1271 to $2542 |
| Final Wages Not Timely Paid | $12,480 |
| Wages Not Timely Paid During Employment | $4100 |
| Non-Compliant Wage Statements | $1950 |
| Failure to Keep Requisite Payroll Records | $500 |
| Unreimbursed Business Expenses | $500 |
| Attorneys Fees | $50,000 |
| **TOTAL** | **$92,407 to $ 94,744** |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:25-cv-05325-JAK (PDx) | Date | March 9, 2026 |
|----------|-------------------------|------|---------------|
| Title | Joseph Roszhart v. Mindlance Inc. et al. | | |

**IV.      Conclusion**

The amount in controversy has been shown to be $92,407 to $94,744. This exceeds that $75,000 statutory, jurisdictional minimum. Accordingly, the Motion is **DENIED**.


**IT IS SO ORDERED.**


                                                                            _____ : _____
                                               Initials of Preparer      LC1